T.C. Summary Opinion 2010-94

UNITED STATES TAX COURT

TRIEU M. LE AND BAYMONE THONGTHEPSOMPHOU, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5957-09S.                    Filed July 19, 2010.

Trieu M. Le and Baymone Thongthepsomphou, pro sese.

S. Mark Barnes, for respondent.

GERBER, Judge:  This case was heard pursuant to the
provisions of section 7463 of the Internal Revenue Code in effect
when the petition was filed.[1]  Pursuant to section 7463(b), the
decision to be entered is not reviewable by any other court, and

_____

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for 2006, the taxable year in
issue.

this opinion shall not be treated as precedent for any other case.

For 2006 respondent determined a $9,398 deficiency in petitioners' Federal income tax and a $1,880 section 6662(a) accuracy-related penalty solely attributable to respondent's classification of Trieu M. Le's (petitioner's) gambling activity as a nonbusiness activity.

## Background[2]

Petitioners resided in Utah at the time their petition was filed. Before 2006 petitioner had a job with a business in his locality. Sometime in 2005 he learned that his employer planned to move the business to Costa Rica. In anticipation of that event petitioner sought to find another source of income and decided that he would become a professional gambler. Petitioner's wife also worked, and he thought that another source of income would allow her to stay home with their child.

Before petitioner's decision to become a professional gambler, petitioners had been casual gamblers but they did not wager large amounts. Sometime during 2005 petitioners began to invest heavily in gambling (mainly playing slot machines). Petitioners were born in Vietnam, and their religious and cultural beliefs were derived from their Vietnamese background.

---

[2]No question was raised by the parties concerning the burden of proof or the burden of production.

They believed in Feng Shui. Because of this belief and other religious and cultural beliefs, they expected that certain days were "lucky days" or days on which their chances of successful gambling increased. They were cognizant that slot machine odds favored the casinos but expected to overcome those odds by attempting to gamble on their "lucky days". In addition, petitioners would watch other slot machine players; and if they had excessive losses, petitioners believed that taking over machines of losing players provided more opportunity. That was their plan for making a profit.

Initially, petitioners' Feng Shui/cultural approach resulted in success. Accordingly, they increased the amounts wagered in 2005 and continued doing so through 2006 and part of 2007. In early 2007 petitioners realized that they were about $200,000 in debt and that their attempt to make a profit had failed. Petitioners had withdrawn money from their retirement funds and borrowed against various assets to finance their attempt to make a profit from gambling. During 2006 petitioners were employed in West Jordan, Utah, and traveled approximately 130 miles to Nevada to pursue gambling.

During 2006 petitioners traveled 130 miles each way to Nevada casinos on Friday afternoons and gambled for long hours, sleeping only a few hours per night. They did this every weekend and on legal holidays when they were off work. Petitioners,

because of their "lucky day" beliefs, generally limited their slot machine playing to one of the two individuals--the one with the more favorable "lucky day" indicators.

During 2006 petitioners reported combined winnings of $852,230. That included $586,038 of winnings that the casinos reported to respondent on Forms W-2G, Certain Gambling Winnings (winnings in excess of $1,200), and $266,192 of winnings that were not reflected on Forms W-2G (winnings in amounts less than $1,200). Of the $586,038, petitioner's Forms W-2G reflected $500,490 and his wife's Forms W-2G reflected $85,548. For 2006 petitioners' losses exceeded their gains by approximately $200,000.

On the 2006 return petitioner claimed that he was a professional gambler (gambled for profit). Petitioner reported his 2006 gambling winnings and losses on a Schedule C, Profit or Loss From Business, but did not claim a loss in excess of winnings for the year. Respondent treated petitioner's winnings as not being from a business (i.e., that petitioner was not in the business of gambling) and accordingly determined that his losses should have been reported on Schedule A, Itemized Deductions, as an itemized deduction rather than a business deduction. The income tax deficiency respondent determined arose from the inclusion of the gambling winnings in income and the resulting increase of the limitations on miscellaneous

itemized deductions claimed on Schedule A.  If respondent had accepted petitioner's reporting position, that he was a professional gambler, there would have been no income tax deficiency and/or section 6662(a) penalty.

### Discussion

The issue we consider is solely a factual one.  We must decide whether petitioner was a professional gambler; i.e., whether he was engaged in the business of gambling for profit. Respondent does not question the amounts of petitioners' gambling winnings or losses--only whether the losses are deductible as business expenses on a Schedule C.  Section 162(a) allows business deductions for all ordinary and necessary expenses paid or incurred in carrying on a trade or business.[3]

To be engaged in a trade or business an individual must be involved in an activity with continuity, regularity, and the primary purpose of deriving a profit.  Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).  The factual determination of whether an individual is engaged in a trade or business is made on a case-by-case analysis.  Id. at 36.  Although a reasonable expectation of a profit is not required, the taxpayer's profit objective must be an actual and honest one.

---

[3]Irrespective of whether gambling losses are incurred in a business or nonbusiness setting, they are allowable only to the extent of gambling winnings.  See sec. 165(d); sec. 1.165-10, Income Tax Regs.

<u>Dreicer v. Commissioner</u>, 78 T.C. 642, 644-645 (1982), affd. without published opinion 702 F.2d 1205 (D.C. Cir. 1983).

Before 2005 petitioners had been occasional recreational gamblers who wagered relatively small amounts. It was after the possibility of the loss of a source of petitioner's income that he set out to find another source of income. Petitioner is from a culture different from that generally extant in the United States, and he drew upon that culture to formulate his business plan. His plan was to use Feng Shui to determine which days were his or his wife's "lucky days" and have that person bet heavily on those days.[4] He also used a technique of watching other players; and if they left a slot machine after heavy losses, petitioner believed that the machine was due for a payoff.

There was nothing casual or superficial about petitioner's plan because he wagered everything he owned in his attempt to win more than he invested. During 2006 petitioners wagered in excess of $1 million dollars, which included more than $850,000 that they had won during that year. Their losses for the year were approximately $200,000, which came from their wages, taxable withdrawals from retirement funds, and loans against property.

---

[4]Petitioner adhered to the "lucky day" approach most of the time.

Petitioners spent every weekend (sleeping very little) and holiday gambling in earnest. Their efforts initially were successful, and there were days of substantial return on their gambling investments. After a time, however, losses began to mount. They continued to invest in the hope of making up for those losses, but in the long run the casinos' built-in edge in the gambling devices took its toll. Petitioners pursued the activity for part of 2005 and for 2006. Early in 2007, with their sources of funds to invest depleted, petitioners ended their attempt to make money from gambling. After that time petitioners went back to occasional recreational gambling activities.

We find that petitioner's gambling activity was a trade or business that was pursued in good faith, with regularity, and for the production of income, and that it was not merely recreation or a hobby. See Commissioner v. Groetzinger, supra at 35.

Respondent argues that petitioner did not pursue his gambling activity full time. In effect, respondent is arguing that gambling must be the only or predominant source of income. We could find no statute or case precedent that sets forth such requirement. Petitioner pursued his gambling activity beginning on Friday afternoon and late into the night, all day Saturday

and late into the night and all day Sunday, with only limited time for rest or sleeping (3 or 4 hours per night), returning to his residence Monday morning.  Accordingly, the number of hours devoted to petitioner's gambling activity approximated the number of hours he worked at his job during the week. Petitioner's recreational approach to gambling, both before and after his attempt to make a profit in gambling, was vastly different and reflects a difference in motive and approach.

Respondent also argues that petitioners' approach was not businesslike and that it was irrational.  The standard, however, requires only that the profit objective be actual and honest. It would be difficult to find on the record before the Court that petitioner's approach to making a profit was irrational. For example, if someone's investment in a stock or a business were based on Feng Shui or some other cultural judgment, that would not per se be "irrational".  Petitioners used their best judgment and successfully tested their business approach. Ultimately, the fact that their approach was unsuccessful does not make it irrational.

We accordingly conclude that petitioner was engaged in a trade or business within the meaning of section 162 and that his gambling losses are not itemized deductions reportable on Schedule A.  Because we have decided the sole deficiency issue

presented for petitioners, there is no need to consider whether the section 6662(a) accuracy-related penalty is applicable.

To reflect the foregoing,

<u>Decision will be entered for petitioners</u>.